**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Dealer Computer Services, Inc., et al., | ) | No. CVO7-00748-PCT-JAT |
| | ) | |
| Plaintiffs, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Fullers' White Mountain Motors, Inc.,et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

Pending before the Court are Defendants' Motion to Dismiss (Doc. # 35), Defendants' Motion to Disqualify Counsel (Doc. # 37), and Plaintiffs' motion for a protective order to prevent Defendants from deposing their counsel (Doc. # 39).  The Court now rules on the motions.

## I. BACKGROUND

Universal Computer Services ("UCS") is a network of affiliated companies that provides computer systems to car dealerships.  (Doc. # 1 at 2).  UCS provides a suite of services that include various inventory functions and communications from dealer to manufacturer.  (*Id.* at 3).  Randy Fuller operates Fullers' White Mountain Motors, Inc., a car dealership in Arizona, and is a former client of UCS.  (*Id.*).

On August 30, 2006, Plaintiffs' counsel John Allen drafted and sent a letter (Doc. # 37-2, Ex. 1) to defendant Randy Fuller on his client's behalf regarding "disparaging" web

1  postings allegedly made on a Dealer Magazine discussion forum on July, 1, 2006. (*Id.*). The

2  letter demanded that Mr. Fuller "retract these disparaging statements in full with an apology

3  for making the statements within five (5) days of the date of this letter." (*Id.* at 2).  On

4  September 4, 2006, Defendants responded with a statement on the Dealer Magazine

5  discussion forum (Doc. # 28 at 7), the sufficiency of which is contested by the parties.

6      On April 9, 2007, UCS filed a Complaint arising from "allegedly defamatory

7  statements made by [Fuller] on an internet . . . forum." (Doc. # 35 at 1–2).  The Complaint

8  alleged libel, libel per se, business disparagement, and tortious interference with prospective

9  contractual relationships, and claimed an amount in controversy "in excess of $75,000."

10  (Doc. # 1 at 2, 4–5).  Defendants amended their answer to include a counterclaim for breach

11  of contract regarding Plaintiffs' counsel's letter on September 6, 2007 (Doc. # 28 at 6–8).

12  In its disclosure statement of August 15, 2007, defense counsel disclosed that the Defendants

13  intended to call Mr. Allen as a witness. (*See* Doc. # 40, Ex. 1).

14      On October 3, 2007, Defendants filed a motion to dismiss the Complaint for lack of

15  subject matter jurisdiction.  (*See* Doc. # 35).  Defendants "do not dispute that there is

16  diversity jurisdiction among the parties, but do specifically dispute . . . that the amount in

17  controversy exceeds $75,000." (*Id.* at 4).  On November 19, 2007,  Defendants further

18  moved to disqualify Mr. Allen as counsel and exclude him from all pre-trial proceedings,

19  arguing that Mr. Allen's testimony was necessary to provide the facts and circumstances

20  surrounding the terms of the purported agreement. (Doc. # 37).  In response, Plaintiffs asked

21  the Court to enter a protective order preventing Defendants from taking Mr. Allen's

22  deposition.  (Doc. # 39).

23  **II.  SUBJECT MATTER JURISDICTION**

24  **A.  The Diversity Jurisdiction Statute**

25      Pursuant to 28 U.S.C. § 1332, "district courts shall have original jurisdiction of all

26  civil actions where the matter in controversy exceeds the sum or value of $75,000,

27  exclusive of interests and costs, and is between . . . citizens of different States[.]"

28  28 U.S.C. § 1332(a)(1).

1

**B. Legal Standard**

2        In a motion under Federal Rule of Civil Procedure 12(b)(1), "[t]he party asserting

3  jurisdiction has the burden of proving all jurisdictional facts." *Indus. Tectonics, Inc. v. Aero*

4  *Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (citing *McNutt v. Gen. Motors Acceptance Corp.*,

5  298 U.S. 178, 189 (1936)). In effect, the court presumes lack of jurisdiction until the plaintiff

6  proves otherwise. *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir.

7  1989). The defense of lack of subject matter jurisdiction may be raised at any time by the

8  parties or the court. *See* Fed. R. Civ. P. 12(h)(3).

9        The rule regarding the amount in controversy for cases brought originally in federal

10  court (as opposed to removals) is the legal certainty rule, stated as follows:

11          The rule governing dismissal for want of jurisdiction in cases brought
           in the federal court is that, unless the law gives a different rule, the sum
12          claimed by the plaintiff controls if the claim is apparently made in good
           faith. It must appear to a legal certainty that the claim is really for less
13          than the jurisdictional amount to justify dismissal.

14  *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938) (footnotes

15  omitted); s*ee also Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "A claim in excess

16  of the requisite amount, made in good faith in the complaint, satisfies the jurisdictional

17  requirement." *Budget Rent-A-Car, Inc. v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997)

18  (citing *St. Paul Mercury*, 303 U.S. at 288). Compliance with the jurisdictional minimum is

19  evaluated using the facts known at the time of filing—"[e]vents occurring after the filing of

20  the complaint that reduce the amount recoverable below the requisite amount do not oust the

21  court from jurisdiction." *Id.* at 1473 (citing *St. Paul Mercury*, 303 U.S. at 293).

22        A timely challenge by the opposing party to federal subject matter jurisdiction

23  "shift[s] the burden to the [party invoking jurisdiction] to show that it does not appear to a

24  legal certainty that their claims are for less than the required amount." *U.S. v. Southern Pac.*

25  *Transp. Co.*, 543 F.2d 676 (9th Cir. 1976) (citing *Gibbs v. Buck*, 307 U.S. 66, 72 (1939)); *St.*

26  *Paul Mercury*, 303 U.S. at 288-89). The Ninth Circuit has described the application of the

27  legal certainty test:

28

1
2
3
4

> Generally speaking, the legal certainty test makes it very difficult to secure a dismissal of a case on the ground that it does not appear to satisfy the jurisdictional amount requirement. Only three situations clearly meet the legal certainty standard: 1) when the terms of a contract limit the plaintiff's possible recovery; 2) when a specific rule of law or measure of damages limits the amount of damages recoverable; and 3) when independent facts show that the amount of damages was claimed merely to obtain federal court jurisdiction.

5
6
7
8
9
10
11
12
13
14

*Pachinger v. MGM Grand Hotel – Las Vegas, Inc.*, 802 F.2d 362, 364 (9th Cir. 1986) (citing 14A Wright, Miller, and Cooper, Federal Practice and Procedure, Jurisdiction, § 3702 at 48–50 (2d ed. 1985)). Legal certainty is a high standard—the Ninth Circuit has "permitted a determination of 'legal certainty' when a rule of law or limitation of damages would make it virtually impossible for a plaintiff to meet the amount-in-controversy requirement," and other circuits have stated that "even where [the] allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." *Id.*; *Scherer v. Equitable Life Assurance Soc'y of the United States*, 347 F.3d 394, 397 (2d Cir. 2003) (quoting *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982)).

15

### C. Discussion

16
17
18
19
20
21
22
23
24

Defendants first argue that the court must presume lack of jurisdiction until Plaintiffs demonstrate otherwise. (Doc. # 35 at 4). With regard to the amount in controversy for diversity jurisdiction, the plaintiff may defeat this presumption by including a good faith claim of greater than the requisite amount in the complaint. *Budget Rent-A-Car*, 109 F.3d at 1473. In their complaint, Plaintiffs allege that the amount in controversy in their claim is "in excess of $75,000," as acknowledged in Defendants' Motion to Dismiss (Doc. # 35 at ¶ 2). In the absence of any evidence of bad faith on the Plaintiffs' part in their pleading, such a claim in the Complaint satisfies its initial burden to establish jurisdiction. *Budget Rent-A-Car*, 109 F.3d at 1473.

25
26
27
28

Defendants next challenge the basis for Plaintiffs' assertion that their damages exceed the jurisdictional minimum. Defendants correctly argue that Plaintiffs have the burden, but state that Plaintiffs must "establish, to a legal certainty, that the claim(s) meet this condition." (Doc. # 38 at 4, citing *Dep't of Recreation v. World Boxing Ass'n*, 942 F.2d 84, 88 (1st Cir.

1991)).  Defendants appear to misunderstand the following passage from that case: "Once challenged . . . the party seeking to invoke jurisdiction has the burden of alleging with sufficient particularity facts indicating that it is *not* a legal certainty that the claim involves *less than* the jurisdictional amount." *Dep't of Recreation*, 942 F.2d at 88 (emphasis added). Plaintiffs likewise misunderstand the rule, arguing that Defendants have the burden to "provide a showing of a legal certainty that the claim is really for less than $75,000." (Doc. # 36 at 4).  As stated *supra*, the *Plaintiffs* carry the burden to show *that it is not a legal certainty* that their claim falls below the jurisdictional amount.

Applying *Pachinger*, this case does not fit either the first or third situations that meet the legal certainty standard.  No contract terms apply to limit Plaintiffs' recovery, simply because Plaintiffs' action is not pursuant to any contract.  Further, Defendants present no independent facts in their motion showing bad faith in the Plaintiffs' Complaint.

This leaves the second situation, which Defendants essentially attempt to invoke: a rule of law or measure of damages.  An example of this type of situation is *Pachinger* itself, which held that a Nevada Innkeeper Statute "limited [hotel]'s  liability to $750, thus depriving the federal court of jurisdiction for lack of the $10,000 amount in controversy." *Id.* at 364.  Defendants argue, on the basis of Plaintiffs' responses to interrogatories, that Plaintiffs cannot show actual injury, and thus cannot recover punitive damages.  (Doc. # 38 at 5, citing *Moore v. Metropolitan Utilities Company*, 477 P.2d 692 (Okla. 1971)).  *Moore*, however, is a utility regulation case, not an Arizona defamation case.  477 P.2d. at 693. Arizona case law specifically states that in defamation cases, "actual injury is not limited to out-of-pocket loss.  Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Boswell v. Phoenix Newspapers, Inc.*, 730 P.2d 186, 196–97 (Ariz. 1986) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350–51 (1974)).  Thus, there is no legal rule preventing Plaintiffs from claiming actual or exemplary damages. While the *Gertz* Court did go on to require "competent evidence" to be shown, that was to support an award of damages by a jury at trial, not to support subject matter

1   jurisdiction.  *Gertz*, 418 U.S. at 350.  Here, there is no legal certainty that the Plaintiff will

2   not be able to present such evidence at trial.[1]  *Id.* at 351.

3         Defendants also argue that a corporation alleging libel "cannot collect general

4   damages for injury to its business reputation, since any loss in the conduct of its business was

5   necessarily included in its claim for lost profits."  *Domney v. Phoenix Newspapers, Inc.*, 708

6   P.2d 742, 748 (Ariz. App. 1985).  *Domney*, however, dealt with a plaintiff corporation who

7   "ceased doing business as a result of the defamatory publications and sought lost profits as

8   its special damages." *Id.* at 748.  Unlike Plaintiffs, Domney, Inc. was not an ongoing concern,

9   and therefore could not claim general damages to its reputation with customers apart from

10  its lost profits.  *Id.*

11        Defendants are correct, however, in asserting that Plaintiffs bear the burden—but

12  under the "legal certainty" standard—to prove that this Court has jurisdictional authority to

13  hear this case.  To do so, Plaintiffs state that the jury determines damages in defamation

14  cases.  (Doc # 36 at 3.)  Plaintiffs argue that "the mere loss of one account as a result of

15  defendants' comments would cause pecuniary injury of more than $75,000." *Id.*  In light of

16  these factors, the Court finds that it is not a legal certainty that a jury would find damages

17  below the jurisdictional amount.  The Court therefore has subject matter jurisdiction in this

18  case.

19  **III.  ADVOCATE-WITNESS RULE AND DISQUALIFICATION**

20  **A.  The Legal Standard**

21  

22        Attorneys are bound by the local rules of the court in which they appear. The District

23  Court of Arizona has adopted the Rules of Professional Conduct approved by the Supreme

24  Court of the State of Arizona.  *Research Corp. Techs., Inc. v. Hewlett-Packard Co.*, 936

25  

26       [1]   Further, Gertz states that even at trial, "there need be no evidence which assigns

27  an actual dollar value to the injury."  *Gertz*, 418 U.S. at 323.

28

F.Supp. 697, 700 (D.Ariz. 1996).  In applying these ethical rules in the context of motions to disqualify opposing counsel, the Arizona Supreme Court has counseled that "only in extreme circumstances should a party to a lawsuit be allowed to interfere with the attorney-client relationship of his opponent." *Alexander v. Superior Court in and for Maricopa County*, 685 P.2d 1309, 1313 (Ariz. 1984).

Not only is the burden on the moving party to show sufficient reason why an attorney should be disqualified from representing his client, but whenever possible, the courts should attempt to reach a solution that is less burdensome to the client or clients than disqualification. *Id.* Additionally, it should be noted that the use of a motion to disqualify as a tactical tool is frowned upon. *Id.* at 1317.

Rule 3.7(a) of the Arizona Rules of Professional Conduct prevents an attorney from acting both as advocate and witness at trial:

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services  rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client.

ARIZ. SUP. CT. R. 42, RULES OF PROF. CONDUCT, ER 3.7 (2008); MODEL RULES OF PROF'L CONDUCT R. 3.7 (2002). The comment to Rule 3.7 states that the reason for the advocate-witness rule is possible prejudice at trial: "A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof." MODEL RULES OF PROF'L CONDUCT R. 3.7 cmt. 2 (2002).

Disqualification only applies when the attorney is "likely to be a necessary witness." *Id.* "[T]here is a dual test for 'necessity.' First the proposed testimony must be relevant and material. Then it must also be unobtainable elsewhere." *Sec. Gen. Life Ins. Co. v. Superior Court In and For Yuma County*, 718 P.2d 985, 988 (Ariz. 1986). "A party's mere declaration

of an intention to call opposing counsel as a witness is an insufficient basis for disqualification even if that counsel could give relevant testimony." *Id.* "It has . . . been long recognized that because every litigant has the *right* to the counsel of its choice a party should not be allowed to disqualify opposing counsel for mere strategic or tactical reasons." *Id.* (citing *Cottonwood Estates, Inc. v. Paradise Builders, Inc.*, 624 P.2d 296, 301–02 (Ariz. 1981)). But, "the rules do permit a party to call adverse counsel as a witness and therefore there are times when counsel must be disqualified because an adverse party intends to call him as a witness." *Id.*

Federal Rule of Evidence 615 states that "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses." FED.R.EVID. 615. Federal Rule of Civil Procedure 30(c) states that in depositions, "[e]xamination and cross-examination of witnesses may proceed as permitted at the trial under the provisions of the Federal Rules of Evidence except Rules 103 and 615." FED.R.CIV.P. 30(c)(1). The comment to the rule's 1993 amendment to add this line specifies that "other witnesses are not automatically excluded from a deposition simply by the request of a party. Exclusion, however, can be ordered under Rule 26(c)(5) when appropriate." FED.R.CIV.P. 30(c) advisory committee's note.

**B. Discussion**

**1. Exclusion From Trial**

The key issue in this case is the threshold question of whether Mr. Allen's testimony is "necessary" with respect to Defendants' breach of contract counterclaim. Plaintiffs argue that "[t]here is no need to take testimony from the author to see if the words mean in plain English what they clearly mean in plain English. The letter speaks for itself." (Doc # 39 at 6). This "four corners" argument is counter to Arizona contract law: "Generally, and in Arizona, a court will attempt to enforce a contract according to the parties' intent." *Taylor v. State Farm Mut. Auto. Ins. Co.*, 854 P.2d 1134, 1138 (1993). Arizona is "expressly committed . . . to the Corbin view of contract interpretation," which holds that "the court

- 8 -

considers the evidence that is alleged to determine the extent of integration," and then "eliminate[s] the evidence that has no probative value." *Id.* at 1139. Thus, without deciding which evidence will be admitted later in this case, Allen's testimony is not immaterial merely because it is extrinsic evidence in a contracts case.

Defendants argue that "as Mr. Allen is the author of the letter in question, he is the only one capable of providing testimony regarding the terms of the agreement." (Doc. #37 at 3). As stated *supra*, extrinsic testimony regarding the terms of the purported agreement and the circumstances surrounding it could be material to the issue of whether the parties intended to enter into an agreement. It is less clear, however, whether Mr. Allen's testimony is necessary and unavailable elsewhere. The inquiry into whether the letter and subsequent action by the Defendants constituted a contract depends upon the intent of the parties. Mr. Allen is not a party to the contract, but rather an *agent* of a party. In drafting the letter on Plaintiffs' behalf, he was presumably expressing their intent. Thus, the information regarding the intent of the Plaintiffs should be available elsewhere: namely, from the Plaintiffs themselves.

Defendants list several other areas of inquiry for Mr. Allen's testimony, including questions about other allegations of defamation he has made, past litigation, tactics against other dealers in past arbitration hearings, and an arbitration proceeding against Mr. Fuller. (Doc. # 37 at 5.) The information Mr. Allen would testify about on all of these subjects is available from other sources: other allegations of defamation would either be matters of public record or matters that other individuals (i.e. those alleged against) could testify to; other dealers could testify to tactics used against them; and Mr. Fuller could testify to other proceedings against him. In light of Arizona law's presumption against disqualifying counsel, the defendant has not met the burden of showing the necessity of Mr. Allen as a witness at this time; therefore, he cannot be disqualified as counsel. Accordingly, it is not necessary to reach the question of whether any of the exceptions to Rule 3.7(a) apply to this case at this time.

1    But this issue may be revisited.  After taking Mr. Allen's deposition, Defendants may

2    discover that his testimony for some specific set of facts is relevant, material, and cannot be

3    found elsewhere.  If Defendants can show, based on his testimony at the deposition, that Mr.

4    Allen's testimony at trial is necessary for a specific reason, they may submit a new motion

5    to disqualify to allow reconsideration of the issue in light of those new facts.

6    **2.  Pre-trial Depositions**

7    Defendants seek exclusion of Mr. Allen from pre-trial depositions based on Federal

8    Rule of Evidence 615. This basis is specifically precluded by Federal Rule of Civil Procedure

9    30(c)(1) ("examination and cross-examination of witnesses may proceed as permitted at the

10   trial under the provisions of the Federal Rules of Evidence except Rules 103 and 615"). FED.

11   R. CIV. P. 30(c)(1).

12   Plaintiffs request a protective order, pursuant to Federal Rule of Civil Procedure 26(c),

13   preventing defense counsel from deposing Mr. Allen to protect the confidentiality of his

14   previous representations of Plaintiffs.  Rule 1.6(a) of the Arizona Rules of Professional

15   Conduct prevents an attorney from "reveal[ing] information relating to the representation of

16   a client unless the client gives informed consent."  ARIZ. SUP. CT. R. 42, RULES OF PROF.

17   CONDUCT, ER 1.6 (2008); MODEL RULES OF PROF'L CONDUCT R. 1.6 (2002).  Mr. Allen's

18   ability to invoke attorney-client privilege should be sufficient to protect the confidentiality

19   of his prior representations, and Plaintiffs give no further reason why a protective order is

20   necessary.

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28

1       Accordingly,

2  **IT IS ORDERED** denying Defendants' Motion to Dismiss (Doc. # 35).

3  **IT IS ORDERED** denying Defendants' Motion to Disqualify Counsel (Doc. # 37)

4  without prejudice.

5  **IT IS ORDERED** denying Plaintiffs' Motion for a Protective Order (Doc. # 39).

6       DATED this 26th day of March, 2008.

James A. Teilborg
United States District Judge