**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dealer Computer Services, Inc., | No. CV07-00748-PCT-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| Fullers' White Mountain Motors, Inc., et al., | |
| Defendants. | |

Pending before the Court are Defendants' Motion for Summary Judgment (Doc. #70) and Plaintiff's Motion for Partial Summary Judgment (Doc. #72). The Court now rules on the motions.

**I. BACKGROUND**

Universal Computer Services ("UCS") is a network of affiliated companies that provides computer systems to car dealerships. (Plaintiffs' Statement of Facts in Support of Plaintiff's Motion for Partial Summary Judgment "PSOF," Doc. #73, ¶2). UCS provides a suite of services that include various inventory functions and communications from dealer to manufacturer. (Doc. #1 at 3). Plaintiff Dealer Computer Services, Inc. ("DCS"), an affiliated company of UCS, sold Computerized Publications Display ("CPD"), an electronic parts catalog. (Doc. #73, PSOF ¶4). In late 2006, UCS acquired Reynolds & Reynolds, a company that also develops and sells computer systems to car dealers. (Doc. #73, PSOF ¶5).

Defendant Randy Fuller owned and operated Fullers' White Mountain Motors, Inc., a car dealership in Arizona, and is a former client of UCS. (Doc. #73, PSOF ¶¶6&7 ). In early 2000, Mr. Fuller, on behalf of Fuller's White Mountain, entered into two contracts to purchase CPD software upgrades from DCS. (Doc. #73, PSOF ¶8). In 2002, Fuller's White Mountain stopped paying DCS the monthly fee under one of its CPD contracts. (Doc. #73, PSOF ¶14). DCS compelled arbitration in Arizona for breach of contract (Doc. #73, PSOF ¶15). In turn, Mr. Fuller asserted that DCS had breached the contract by not suppling a Pentium processor. (Doc. #73, PSOF ¶16). The arbitrator ruled in favor of DCS, finding that Fuller's White Mountain had breached the contract, not DCS. (Doc. #73, PSOF ¶17). Mr. Fuller has testified that he is still angry and upset with DCS over the arbitration. (Doc. #73, PSOF ¶20).

Dealer Magazine is car dealership print magazine. (Doc. #73, PSOF ¶21). More than 20,000 general managers and dealership owners receive a copy of the magazine each month. (Doc. #73, PSOF ¶22). As a companion to the print publication, Dealer Magazine also offers an online forum located at the following Uniform Resource Locator Internet address: http://www.dealer-magazine.com/forum ("Dealer Magazine Forum"). (Doc. #73, PSOF ¶24). Mr. Fuller is a user of Dealer Magazine Forum and his user handle is "Select Dealer." (Doc. #73, PSOF ¶25). Plaintiff brought this litigation based on messages that Mr. Fuller posted on the Dealer Magazine Forum.

On July 1, 2006, Mr. Fuller posted the following message on the forum:

> UCS is a piece of brown stinky stuff that comes from the back end or [sic] a camel . . . . Of the "big 3" . . . UCS comes in fourth. But as for the company and their management . . . They make Enron look like school boy pikers. Offensive contracts and over-inflated charges are just the tip of the iceberg with these folks. Going out of business would be too gentle for them. . . . they need jail time.

(Doc. #73, PSOF ¶26). Mr. Fuller admits he posted those comments. (Doc. #73, PSOF ¶27).

Also on July 1, 2006, Fuller posted another statement about UCS on the forum: "UCS has lied and cheated their way into dealerships for years." (Doc. #73, PSOF ¶33). Mr. Fuller

- 2 -

admits he posted that comment to the forum. (Doc. #73, PSOF ¶32). On August 18, 2006, Mr. Fuller made still more comments about UCS on the forum:

> UCS is buying R&R (Brockman is putting up $1 billion of the $2.8 billion) therefore you can expect that R&R will be run like the UCS of old . . . rip off their heads and sh*t down their necks will be the rule of the day.
>
> * * *
>
> R&R is in trouble with a marriage to Brockman and his den of thieves. They will defraud the entire industry just as they defrauded Ford dealer's [sic] all of these years.

(Doc. #73, PSOF ¶35). Mr. Fuller admits that he posted this message. (Doc. #73, PSOF ¶36).

On August 30, 2006, Plaintiff's outside counsel drafted and sent a letter to Mr. Fuller requesting that he retract the statements he had made on the forum and apologize. (Doc. #73, PSOF ¶41). The letter reads in relevant part:

> USC hereby demands that you retract these disparaging statements in full with an apology for making the statements within five (5) days of the date of this letter. If no retraction is forthcoming, USC will seek all available legal remedies against you and your companies.

(Doc. # 37-2, Ex. 1). Mr. Fuller did not have any discussions with UCS or its counsel regarding the letter. (Doc. #73, PSOF ¶43).

On September 4, 2006, Mr. Fuller posted the following two statements on the forum: 1) "It seems that I have offended the sensibilities of Mr. Brokeman [sic] and his attorney, John C. Allen. I do apologize for hurthing [sic] their feelings and I retact [sic] those particular statements, or any other that might be considered offensive. I sometimes get carried away with my passion for UCS and make inappropriate remarks." (Doc. #73, PSOF ¶43), and 2) "It seems that I have offended the sensibilities of Mr. Brokeman [sic] and his attorney, John C. Allen by stating in my May 4th post that "UCS had lied and cheated their way into dealerships for years. I do apologize for hurthing [sic] their feelings and I retact [sic] that particular statements [sic] or any other that might be considered offensive. I

- 3 -

1  sometimes get carried away with my passion for UCS and make inappropriate remarks."
2  (Doc. #73, PSOF ¶44).

3  On April 9, 2007, DCS, d/b/a UCS, filed a Complaint arising from "allegedly
4  defamatory statements made by [Fuller] on an internet . . . forum." (Doc. # 35 at pp. 1–2).
5  The Complaint alleges libel, libel per se, business disparagement, and tortious interference
6  with prospective contractual relationships. (Doc. # 1 at pp. 2, 4–5). On September 6, 2007,
7  Defendants amended their Answer to include a counterclaim for breach of contract regarding
8  Plaintiff's counsel's letter. (Doc. # 28 at pp. 6–8).

9  Defendants have filed a Motion for Summary Judgment (Doc. #70) on all counts.
10 And Plaintiff has filed a Motion for Partial Summary Judgment (Doc. #72) on liability for
11 its libel per se claim and for summary judgment on Defendants' counterclaim for breach of
12 contract.

13 **II. LEGAL STANDARD**

14 Summary judgment is appropriate when "the pleadings, depositions, answers to
15 interrogatories, and admissions on file, together with affidavits, if any, show that there is no
16 genuine issue as to any material fact and that the moving party is entitled to summary
17 judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, summary judgment is mandated,
18 "...against a party who fails to make a showing sufficient to establish the existence of an
19 element essential to that party's case, and on which that party will bear the burden of proof
20 at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

21 Initially, the movant bears the burden of pointing out to the Court the basis for the
22 motion and the elements of the causes of action upon which the non-movant will be unable
23 to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the
24 non-movant to establish the existence of material fact. *Id.* The non-movant "must do more
25 than simply show that there is some metaphysical doubt as to the material facts" by
26 "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'"
27 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting
28

- 4 -

1  Fed. R. Civ. P. 56(e)).  A dispute about a fact is "genuine" if the evidence is such that a
2  reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby,*
3  *Inc.*, 477 U.S. 242, 248 (1986).  The non-movant's bare assertions, standing alone, are
4  insufficient to create a material issue of fact and defeat a motion for summary judgment.  *Id.*
5  at 247-48. However, in the summary judgment context, the Court construes all disputed facts
6  in the light most favorable to the non-moving party.  *Ellison v. Robertson*, 357 F.3d 1072,
7  1075 (9th Cir. 2004).

### III. ANALYSIS AND CONCLUSION

#### A. Business Disparagement and Tortious Interference

Defendants move for summary judgment on Plaintiff's Counts III and IV for Business Disparagement and for Tortious Interference with Prospective Contractual Relationships. In its response to the motion, Plaintiff concedes that it does not have any evidence to support those Counts.  (Doc. #77, p. 2 n.1).  The Court therefore grants summary judgment to Defendants on Counts III and IV of the Complaint.

#### B. Libel and Libel Per Se

Count I of Plaintiff's Complaint is for libel, and Count II is for libel per se. A defamation action compensates damage to reputation or good name caused by the publication of false information. *Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781, 787 (Ariz. 1989). The law of defamation encompasses both libel and slander. *Boswell v. Phoenix Newspapers, Inc.*, 730 P.2d 178, 183 n.4 (Ariz. Ct. App. 1985), approved as supplemented by *Boswell v. Phoenix Newspapers, Inc.*, 730 P.2d 186 (Ariz. 1986). Libel is a written or visual defamation, and slander is an oral defamation. *Boswell*, 730 P.2d at 183 n.4.

In Arizona, written or visual communications that on their face falsely tend to impeach one's honesty, integrity, or reputation are libel per se. *Id*. And communications that are defamatory only by considering extrinsic information are considered libel per quod. *Id*. In order to recover for libel per quod, a plaintiff must plead and prove special, lost profit damages. *Ilitzky v. Goodman*, 112 P.2d 860, 862 (Ariz. 1941); *see also Modla v. Parker*, 495

- 5 -

1 P.2d 494, 496 (Ariz. Ct. App. 1972) ("As a general rule, slander Per quod is not actionable
2 unless special damages are pleaded and proved.").

3     1.    Libel

4 While Plaintiff may have adduced sufficient evidence to create an issue of fact on
5 actual, or loss of reputation, damages it has not created an issue of fact as to special, or lost
6 profit, damages. Because without special damages Plaintiff can recover only on a libel per
7 se theory, the Court will grant summary judgment to Defendants on Count I of the
8 Complaint. The Court therefore must determine whether Defendants or Plaintiff or neither
9 party is entitled to summary judgment on Plaintiff's libel per se claim.

10     2.    Libel Per Se

11 In order to prevail on its claim for libel per se, Plaintiff must prove that Mr. Fuller
12 published a false, defamatory statement concerning Plaintiff to a third party and fault by Mr.
13 Fuller. *Boswell*, 730 P.2d at 183. The level of fault that Plaintiff must prove depends on
14 Plaintiff's status as a public or private figure[1] and whether Mr. Fuller's comments were on
15 a topic of public concern. Those same factors also influence the type of proof required for
16 certain damages.

17 In support of their motion for summary judgment on Plaintiff's libel and libel per se
18 claims, Defendants argue: Plaintiff has not proved special damages or actual harm; Mr.
19 Fuller's statements are absolutely privileged under the First Amendment as pure opinions;
20 and Plaintiff cannot prove actual malice as required both by Arizona Revised Statutes section
21 12-653.02 and by Plaintiff's status as a public figure. In addition, in response to Plaintiff's
22 Motion for Partial Summary Judgment, Defendants argue that Mr. Fuller's statements were
23 privileged. The Court will address these arguments in the order presented by Defendants.

---

[1] The level of fault required in Arizona when the plaintiff is a private person is either: 1) knowledge of falsity; 2) reckless disregard of truth or falsity; or 3) negligence with regard to truth or falsity. *Boswell*, 730 P.2d at 180; *see also Rowland v. Union Hills Country Club*, 757 P.2d 105, 110 (Ariz. Ct. App. 1988).

- 6 -

a. Damages

Defendants first argue that Plaintiff did not suffer pecuniary loss to its business as a result of the alleged defamation and therefore Plaintiff cannot recover on its libel/libel per se claims. More generally, Defendants argue that all libel actions require proof of actual injury, which Plaintiff has not demonstrated.

As stated earlier in this Order, the Court agrees that Plaintiff has not proven special, pecuniary, i.e. lost profit, damages. Consequently, Plaintiff cannot pursue a libel per quod cause of action. Although the Court doubts the wisdom of retaining the libel per se/libel per quod dichotomy, Arizona courts have done so. *See, e.g. Boswell*, 730 P.2d at 183 n.4. The Court therefore cannot allow Plaintiff to pursue relief for the Enron comment. Mr. Fuller's Enron comment is libel per quod because the comment requires consideration of extrinsic evidence (knowledge of the Enron scandal and the violations involved therein) to ascertain its libelous meaning. But none of the other comments made by Mr. Fuller fall under this category, and, hence, are potentially actionable.

Plaintiff does not need to plead or prove special damages to recover under libel per se. In fact, under the common law, damages were presumed for libel per se. *Boswell*, 730 P.2d at 188 ("[U]nder common law, if a publication was libelous per se, plaintiff did not have to allege or prove either actual or special damages; general damage was presumed and could be awarded absent proof of any specific injury") (internal citations omitted).

Subsequent Supreme Court first amendment cases have eliminated the presumption of damages in many circumstances. *See, e.g., Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349 (1974). For instance, if a plaintiff is a public official, *New York Times v. Sullivan*, 376 U.S. 254 (1964), or public figure, *Curtis Publ'g Co. v. Butts*, 388 U.S. 130 (1967), he or she must prove that the defendant acted with actual malice to recover anything. Even if a plaintiff is a private individual, if the defamation involves matters of public concern, the plaintiff cannot recover presumed or punitive damages absent proof of actual malice. *Boswell*, 730 P.2d at 196 (citing *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749 (1985)). But

1 if the plaintiff is a private figure and the speech is of solely private concern, then the plaintiff
2 can recover presumed and punitive damages without proving actual malice. *Dun &*
3 *Bradstreet*, 472 U.S. at 763; *Dombey v. Phoenix Newspapers*, 724 P.2d 562, 567 (Ariz.
4 1986).

5 The courts have not given much guidance regarding when speech involves matters of
6 public concern. The Supreme Court has stated that courts should consider the speech's
7 content, form and context as revealed by the whole record. *Dun & Bradstreet*, 724 P.2d at
8 761. In *Dun & Bradstreet*, the Supreme Court indicated that if the speech implicated a
9 strong interest in the free flow of commercial information, it might constitute a matter of
10 public concern. The Court finds that given the potentially large audience of the comments
11 and the interest in promoting the free flow of commercial information (albeit of suspect
12 value), Mr. Fuller's comments touched on matters of public concern.

13 Because Mr. Fuller's comments touched on matters of public concern, Plaintiff cannot
14 recover presumed or punitive damages absent proof of actual malice. *Boswell*, 730 P.2d at
15 196. But Plaintiff can recover any actual or general damages, for example, damages to its
16 reputation. *Gertz*, 418 U.S. at 349-50. Actual malice requires clear and convincing proof
17 that the defendant made the false statement with knowledge that it was false or with reckless
18 disregard for whether it was false. *Dombey*, 724 P.2d at 573.

19 The Court determines in the first instance as a matter of law whether the evidence
20 in a defamation case sufficiently supports a finding of actual malice. *Milkovich v. Lorain*
21 *Journal Co.*, 497 U.S. 1, 17 (1990). Although this somewhat puts the cart before the horse,[2]
22 the Court finds that the evidence supports submitting the question of actual malice to the
23 jury. While Mr. Fuller accused Plaintiff of defrauding Ford dealers, Mr. Fuller has testified

---

[2]This finding presumes, as the Court later determines in this Order, that a reasonable hearer of Mr. Fuller's statements could have interpreted those comments as assertion of fact. The Court has attempted to address Defendants' arguments in the order Defendants presented them.

- 8 -

that to his knowledge Plaintiff has never been indicted for criminal fraud. (Doc. #73, PSOF ¶¶29-30). Mr. Fuller has further testified that he is still "mad" at Plaintiff about the prior lawsuit. Plaintiff therefore might be entitled to presumed and punitive damages if the jury finds that Mr. Fuller acted with actual malice.

But even if the jury finds Mr. Fuller did not act with actual malice, Plaintiff may still recover actual damages. "[A]ctual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, [and] there need be no evidence which assigns an actual dollar value to the injury." *Gertz*, 418 U.S. at 350. The Court finds that with the testimony of its owner and employees and the expert testimony, Plaintiff has at least created an issue of fact as to actual damages. Of course, at trial, Plaintiff must adequately support any request for actual damages with competent evidence. *Id*.

The Court will not grant Defendants' Motion for Summary Judgment based on Plaintiff's based on a failure to prove damages. The Court finds that Plaintiff has created an issue of fact as to actual damages, and, moreover, that Plaintiff may not even need to prove any actual injury occurred.

b. Privileged Opinion

Defendants next argue that Mr. Fuller's comments are absolutely privileged under the first amendment as opinion. No separate constitutional privilege for "opinion" exists. *Milkovich*, 497 U.S. at 21; *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990). Rather, the threshold question in libel suits is whether a reasonable fact finder could conclude that a statement implies an assertion of objective fact. *Unelko*, 912 F.2d at 1053; *Yetman v. English*, 811 P.2d 323, 329 (Ariz. 1991). The trial court first decides whether, under all the circumstances, a statement is capable of having a defamatory meaning. *Yetman*, 811 P.2d at 331. "The jury then decides whether the defamatory meaning of the statement was in fact conveyed." *Id*. (internal citations omitted). Only in the "clearest of cases" should a court find as a matter of law that comments either do or do not imply actual facts. *Id*. (internal

- 9 -

citations omitted). If reasonable people might clearly give conflicting interpretations to comments, then the question should go to the fact finder. *Id.* (internal citations omitted).

In order to determine whether a reasonable fact finder could conclude that a statement implies an assertion of objective fact, the Court will consider: whether Mr. Fuller used figurative or hyperbolic language that would negate the impression that he was seriously contending that Plaintiff had lied to and defrauded customers; whether the general tenor of his comments negates that impression; and whether the assertion that Plaintiff has committed a crime or otherwise deceived and defrauded its customers is susceptible of being proved true or false. *Unelko*, 912 F.2d at 1053.

While Mr. Fuller certainly did use hyperbolic language, like "piece of brown stinky stuff" and "rip off their heads and sh*t down their throats," some of his other comments were not couched in loose, figurative, or hyperbolic language. *See id.* at 1054. For instance, the statements that "UCS has lied and cheated their way into dealerships for years," that "they need jail time," and that "R&R is in trouble with a marriage to Brockman and his den of thieves. They will defraud the entire industry just as they defrauded Ford dealer's all of these years," produces the impression that Plaintiff has lied to its customers, committed criminal acts, such as fraud, or has committed civil fraud. The general tenor of Mr. Fuller's comments does not negate the overall impression that Plaintiff has defrauded and deceived its customers. And the non-hyperbolic comments listed by the Court are susceptible of being proved true or false. Plaintiff could present evidence that no court has ever convicted it of criminal fraud and that no court or arbitrator has found it civilly liable for fraud or other deceptive practices.

The Court finds that, under all the circumstances, Mr. Fuller's comments are capable of having a defamatory meaning. A reasonable fact finder could determine that his statements imply an assertion of objective fact. Because reasonable people could interpret Mr. Fuller's comments differently, the Court will leave the issue to the fact finder to decide. But the jury will be instructed that if they do not interpret the comments as asserting or

- 10 -

1  implying actual fact, their verdict must be for Defendants. *Yetman*, 811 P.2d at 332-33.

2        c.    Actual Malice

3  Defendants argue that Plaintiff has failed to prove actual malice as required by both Arizona Revised Statutes section 12-653.02 and by Plaintiff's status as a public figure. First, section 12-653.02 does not apply to this case. On its face, that section applies only to libel actions based on newspaper or magazine articles. A.R.S. §12-653.02 ("In an action for damages for the publication of a libel in a newspaper or magazine, or of a slander by radio or television broadcast, the plaintiff shall recover no more than special damages . . ., unless the plaintiff shall prove . . . actual malice."). Defendants are not members of the media. Nor did Mr. Fuller print his comments in a newspaper or magazine. The actual malice requirement of section 12-653.02 therefore does not apply.

Second, Plaintiff DCS is not a public figure or a limited purpose public figure. A plaintiff can achieve "such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts." *Gertz*, 418 U.S. at 351. Or a plaintiff may voluntarily inject himself or become drawn into a particular public controversy such that the plaintiff becomes a public figure for a limited range of issues. *Id*. A plaintiff who thrusts himself or his views into public controversy to influence others may become a limited purpose public figure. *Dombey*, 724 P.2d at 569.

As Defendants concede (Doc. #84, p. 11), Plaintiff does not have such pervasive fame or notoriety that it is a pubic figure for all purposes. Nor have Defendants demonstrated that Plaintiff is a limited purpose public figure with regard to the comments made by Mr. Fuller. Defendants have not shown that a public *controversy* existed regarding UCS's purchase of R&R prior to Mr. Fuller's comments. *See id.* Nor have Defendants demonstrated that Plaintiff attempt to thrust its views upon the public in order to influence others. *See id*. Just because Plaintiff advertised to automobile dealerships does not necessarily make it a public figure. *Antwerp Diamond Exchange of America, Inc. v. Better Business Bureau of Maricopa County, Inc.*, 637 P.2d 733, 737 (Ariz. 1981) (finding that the plaintiff's pervasive mail and

- 11 -

1 telephone solicitations did not make it a public figure). And Defendants have not shown that 2 Plaintiff has any special and continuing access to the media because of its status. *See* 3 *Dombey*, 724 P.2d at 569. Defendants therefore have not demonstrated that Plaintiff is a 4 limited purpose public figure.

5 Third, even if Plaintiff were a limited purpose public figure and therefore had to prove 6 actual malice, the Court has determined already that the evidence in this case could support 7 a reasonable jury finding that Plaintiff has shown actual malice by clear and convincing 8 evidence. Mr. Fuller accused Plaintiff of defrauding its customers. Yet he had never heard 9 of Plaintiff being found guilty of or liable for fraud. This admission implies that he was at 10 least reckless with regard to the truth of his comments. Mr. Fuller's continued anger with 11 Plaintiff may have contributed to any recklessness. Thus, if the jury finds the comments 12 were defamatory, it should then determine whether Mr. Fuller acted with actual malice in 13 making the comments.

14                       d.       Common Interest Privilege

15 Certain qualified privileges may serve as defenses to an action for defamation. *Green* 16 *Acres Trust v. London*, 688 P.2d 617, 620-21 (Ariz. 1984). One of those qualified privileges 17 is the "common interest" privilege. *Id.* at 625. Whether a qualified privilege exists is a 18 question of law for the court. *Id.* at 624. Defendants have the burden of proving that a 19 qualified privilege applies. *Id.* ("Once a defendant demonstrates that a conditional privilege 20 may apply . . . .").

21 Defendants did not raise the common interest privilege as a defense in their Amended 22 Answer, although they did raise other defenses, such as retraction and lack of actual malice. 23 (Doc. #28, at pp. 5-6). Nor did Defendants raise this defense in their Motion for Summary 24 Judgment. Defendants first argued that the common interest privilege applies in their 25 response to Plaintiff's Motion for Partial Summary Judgment (Doc. #75, pp.5-7). As the 26 party with the burden on this issue, the Court finds that Defendants waived the common 27 interest privilege defense by failing to raise it in their Amended Answer or in their Motion

28 - 12 -

for Summary Judgment.

Even if Defendants had properly raised the issue, the Court finds that the common interest privilege does not apply to this case. The common interest privilege arises if "one is entitled to learn from his associates what is being done in a matter in which he has an interest in common with them." *Green Acres*, 688 P.2d at 625 (quoting RESTATEMENT (SECOND) OF TORTS §596, comment c). The privilege applies in contexts like associates in a commercial enterprise, users of mercantile agencies, co-owners of property, or co-members of boards. *Id*. (internal citations omitted). "In these contexts, each participant in the association, group or organization depends on other participants to supply relevant information. Through the qualified privilege, courts facilitate the exchange of information by protecting statements about matters affecting the goals of that organization or group. *Id*.

Defendants argue that the privilege applies here because each member of the Dealer Magazine forum relies on other participants to supply information regarding topics relevant to the operation of their businesses. First, Defendants have not demonstrated that the website is in any way restricted or password-protected. Presumably, anyone with access to the internet could read the posts on the forum, whether that person owned and operated a car dealership or not.

Second, Defendants have not shown that even if "only" the 20,000 subscribers to Dealer Magazine visit the forum, those 20,000 members need the information on the forum in order to conduct their businesses. Undoubtedly, visitors to the website receive valuable information on occasion. But it does not follow that the visitors to the website need that information in order to run their businesses,[3] nor that the visitors had an obligation to share information. *See Miller v. Servicemaster by Rees*, 851 P.2d 143, 145 (Ariz. Ct. App. 1992) (stating that in determining whether a qualified privilege applies, courts must determine if

---

[3] If that were true, how did car dealerships operate before the prevalence of the world wide web?

- 13 -

1 an obligation to speak existed).

2 The mere existence of a website where thousands of car dealership owners and
3 members of the public can exchange information does not create the sort of close association
4 or group contemplated by the common interest privilege. Mr. Fuller's comments therefore
5 are not qualifiedly privileged.

6    e.  Plaintiff's Motion for Partial Summary Judgment

7 Plaintiff has moved for partial summary judgment on the issue of liability for libel per
8 se. Because the Court has held in this Order that material issues of fact remain as to whether
9 Mr. Fuller's comments implied assertions of fact, whether Mr. Fuller acted with actual
10 malice, and regarding what, if any, damages Plaintiff suffered, the Court will deny Plaintiff's
11 motion for judgment as a matter of law on liability.[4]

12 **C.    Counterclaim for Breach of Contract**

13 In their counterclaim for breach of contract, Defendants argue that the August 30,
14 2006 demand letter sent by Plaintiff's lawyer to Mr. Fuller constituted a binding contract,
15 which Plaintiff breached by suing Defendants. That letter read,

16 > USC hereby demands that you retract these disparaging
17 > statements in full with an apology for making the statements within five (5) days of the date of this letter. If no retraction is
18 > forthcoming, USC will seek all available legal remedies against you and your companies.

19 (Doc. # 37-2, Ex. 1). There are no material factual disputes regarding the contents of the
20 letter or the basis for the breach of contract claim.

21 In order for an enforceable contract to exist, there must be an offer, an acceptance,
22 consideration, and sufficient specification of terms such that the obligations involved can be

---

25 [4]Plaintiff asserts that it has the burden of proving the falsity of the statements because
26 Mr. Fuller's comments were on a topic of public concern. Plaintiff cites *Unelko*, 912 F.2d at 1056 for this proposition. The Court believes it is at least possible that that requirement
27 applies only where the defendant is a media defendant. But because Plaintiff concedes it has that burden, the Court will hold Plaintiff to it at trial.

28 - 14 -

1 ascertained. *Savoca Masonry Co. v. Homes and Son Constr. Co.*, 542 P.2d 817, 819 (Ariz. 1975). Defendants' breach of contract claim fails at the first requirement for contract. The demand letter's threat to sue Defendants if they did not issue a retraction and an apology does not constitute a binding offer not to sue them if they did issue a retraction. The demand letter simply cannot be construed as a binding promise not to sue.[5]

Although Defendants did not plead it as a separate count in their counterclaim, they also argue that they should recover under a theory of promissory estoppel. Promissory estoppel can serve as a substitute for consideration,[6] but the lack or presence of consideration does not matter if no binding promise has been made. Because Plaintiff did not make a binding offer not to sue, no contract existed and Plaintiff is entitled to summary judgment on Defendants' counterclaim.

Accordingly,

IT IS ORDERED GRANTING in part and DENYING in part Defendants' Motion for Summary Judgment (Doc. #70). It is ordered granting summary judgment to Defendants on Counts I, III, & IV. It is ordered denying summary judgment on Count II.

IT IS FURTHER ORDERED GRANTING in part and DENYING in part Plaintiff's Motion for Partial Summary Judgment (Doc. #72). It is ordered granting Plaintiff's motion for summary judgment on Defendants' Counterclaim for Breach of Contract. It is ordered denying Plaintiff's motion for summary judgment on liability for Plaintiff's Count II.

DATED this 16th day of October, 2008.

James A. Teilborg
United States District Judge

---

[5] Surely Defendants do not argue that if Mr. Fuller had not printed a retraction, Plaintiff would have been contractually obligated to sue them? If that is not true, then how could the converse be true?

[6] *Schade v. Diethrich*, 760 P.2d 1050, 1060 (Ariz. 1988).